IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| C.K., | : | Civil Action No. 4:15-00280 |
| Plaintiff, | : | (Judge Brann) |
| v. | : | |
| HOPE WRYE, in her individual capacity, CENTRAL INTERMEDIATE UNIT #10, and PHILIPSBURG-OSCEOLA AREA SCHOOL DISTRICT, | : | |
| Defendants. | : | |

**MEMORANDUM**
August 31, 2015

Pending before this Court is a motion to dismiss filed by Defendant Central Intermediate Unit #10 (hereinafter "CIU10") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion seeks to dismiss Plaintiff C.K.'s claims for municipal liability under 42 U.S.C. § 1983 and violations of Title IX under 20 U.S.C. § 1681. This matter has been fully briefed and is now ripe for disposition. In accordance with the following reasoning, Defendant CIU10's motion to dismiss is granted in part and denied in part. To the extent Plaintiff's claim under 18 U.S.C. § 1983 is predicated on a policy adopted or promulgated by CIU10, it is dismissed without prejudice with leave to amend to allege more specifically the contours of that policy. To the

1

extent that claim is predicated, however, on CIU10's deliberate indifference to a known risk, Defendant's motion to dismiss is denied.  Moreover, Defendant's motion to dismiss Count III under Title IX is denied.

**I. BACKGROUND**

The instant matter arises from allegations of sexual abuse suffered by the then minor Plaintiff in high school by Defendant Hope Wrye, a teacher's assistant. Defendant CIU10 is an organization that provides educational services to twelve school districts in Central Pennsylvania, including the Philipsburg-Osceola Area School District.  The Philipsburg-Osceola Area School District, in turn, operates the Philipsburg-Osceola Senior High School, which Plaintiff was attending at the time of the alleged abuse.  Defendant Wrye was an employee of CIU10 who was assigned to the Philipsburg-Osceola Area School District.

During the 2000-2001 school year, Plaintiff was fifteen years old and in the 9th grade at Philipsburg-Osceola Senior High.  He had learning difficulties, received special emotional support, and was educated under the terms of an Individualized Educational Program (hereinafter "IEP").  He was therefore assigned to an emotional support classroom, which was taught by a CIU10 employee.  Defendant Wrye was the teacher's assistant in this classroom; during the 2000-2001 school year she was thirty-one years old. Within weeks of beginning to work with Plaintiff, Defendant Wrye began to spend an inordinate

amount of time with him and displayed an uncommon interest in him.  She further began to openly interact with Plaintiff in an inappropriate manner by making flirtatious comments, engaging in teasing and other physical contact, and wandering the hallways of the school with Plaintiff.  On one occasion she even blew kisses at Plaintiff while he was in study hall, causing a supervising teacher to close the door so that Defendant Wrye would not bother Plaintiff.

 By early 2001, Defendant Wrye was leaving school with Plaintiff on a daily basis, taking him to her house, and coercing him to engage in sexual activity. Employees of the school district and CIU10 observed the two leaving the school together and also observed Plaintiff at Defendant Wrye's home.  By the end of the 2001-2002 school year, the inappropriate interactions and behaviors had become so pervasive that at least one school district employee complained to the high school principal, John Mackin, that they believed Defendant Wrye was having an affair with Plaintiff.  Moreover, a supervising CIU10 employee who had daily interactions with Defendant Wrye suspected that she was engaged in an inappropriate sexual relationship with Plaintiff and later learned that Defendant was accused of having this relationship with Plaintiff, but failed to investigate or report Defendant Wrye's misconduct.  After this report, John Mackin summoned Defendant Wrye to his office and questioned her regarding the accusation. However, no formal investigation was initiated, the police were not contacted, and

Plaintiff was never questioned about his relationship with Defendant Wrye. Instead, Defendant Wrye resumed her normal duties and continued to supervise Plaintiff for the next several months.

Because of the abuse he was suffering at the hands of Defendant Wrye, Plaintiff found it virtually impossible to concentrate on his school work. Even though Defendant Wrye was transferred to another school within the school district at the beginning of the 2002-2003 school year, she continued to have contact with Plaintiff at his high school, which was observed by CIU10 and school district employees and officials. By October of 2003, Plaintiff was unable to function at school, apparently in light of the abuse. He withdrew from school. Immediately thereafter, Plaintiff and Defendant Wrye began to live together; within a few weeks she became pregnant.

## II. LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff. *See Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). However, "the tenet that a court must accept as true all of the [factual] allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations

4

omitted). In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint. *See Kost*, 1 F.3d at 183. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. At the motion to dismiss stage, the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).

A complaint should only be dismissed if, accepting as true all of the allegations in the amended complaint, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-664.

"In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading." *Hellmann v. Kercher*, No. 07-1373, 2008 WL 1969311 at * 3 (W.D. Pa. May 5, 2008) (Lancaster, J.). Federal Rule of Civil Procedure 8 "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds on which it rests,'" *Twombly*, 550 U.S. at 554 (quoting *Conley v. Gibson*, 355 U.S. 41,

47 (1957)). However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief. *See Hellmann*, 2008 WL 1969311 at *3. Instead, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Twombly*, 550 U.S. at 561. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not "shown" - - "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law." *Id*. at 326. If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id*. at 327.

### III. DISCUSSION

### A. Count II Municipal Liability

Defendant first argues that the Court should dismiss Count II of Plaintiff's amended complaint for violation of 42 U.S.C. § 1983 as against Defendant CIU10

6

for several reasons: (1) because Plaintiff has failed to sufficiently identify a custom or policy instituted by CIU10 and has not alleged proof of knowledge and acquiescence in that custom by a CIU10 decisionmaker; and (2) because Plaintiff has failed to allege facts to support that a CIU10 policymaker had knowledge of and exhibited deliberate indifference in the face of a known threat or high likelihood of injury to him. Plaintiff responds that he has pled that CIU10 maintained official policies, procedures and/or customs that allowed Defendant Wrye's relationship with Plaintiff to proceed, including a custom of not investigating, supervising, or training with regard to employees' sexual relationships with students, ignoring complaints regarding such misconduct, and affirmatively covering up teacher-student sexual relationships. Furthermore, he contends, he has pled sufficient facts to demonstrate that CIU10 had knowledge of and exhibited deliberate indifference to the relationship between Plaintiff and Defendant Wrye.

An analysis of Defendant CIU10's liability must necessarily begin with the Supreme Court's decision in *Monell v. Department of Social Services of City of New York*. In that case, the Supreme Court determined that, while municipal bodies may not be sued solely for violations perpetrated by its employees or agents, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

7

official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. 658, 694 (1978). A policy is a decision of a municipality's "duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Board of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403-4 (1997); *see also Kocher v. Larksville Borough*, 548 Fed.Appx. 813, 821 (3d Cir. 2013). A custom is any practice "that has not been formally approved by an appropriate decisionmaker" but "is so widespread as to have the force of law." *Id*. at 404.

Following a determination that the defendant municipality acted under an appropriate policy or custom, "[t]he plaintiff must also demonstrate that through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Id*. Specifically, this means that a plaintiff must demonstrate that "the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id*.

There are three situations in which acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity, creating liability under § 1983: (1) where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy"; (2) where "no rule has been announced

8

as policy but federal law has been violated by an act of the policymaker itself"; and (3) where "the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice is so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Bryan County*, 520 U.S. at 404).

1. Policy or Custom

Under the first two scenarios, a Plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests.").

Plaintiff claims that he has provided sufficient allegations in his amended complaint to provide notice to Defendant CIU10 of the official policies, procedures, and customs for which he contends CIU10 is liable. Specifically he has pled that:

> 45. CIU and the School District maintained official policies, procedures, and/or customs that amounted to reckless indifference toward CIU and School District employees' sexually abusive relationships with students, including, but not limited to:
>     a. failing to investigate Defendant Wrye's relationship with C.K.;
>     b. failing to adequately supervise Defendant Wrye and C.K.'s relationship;
>     c. failing to remedy Defendant Wrye's misconduct with regard to C.K.;
>     d. failing to adequately train CIU and School District employees regarding students with special needs;
>     e. failing to adequately supervise CIU and School District employees' relationships with special needs students;
>     f. ignoring complaints regarding student and teacher miscoduct [*sic*];
>     g. affirmatively covering up student and teacher misconduct;
>     h. affirmatively covering up Defendant Wrye's sexual relationship with C.K.

Plaintiff has not, however, pled that CIU10 or an officer has promulgated and implemented a policy which led to his sexual abuse, nor has he pled a custom which is so widespread as to have the force of law. Importantly, he has not alleged any facts in support of these assertions. Rather, what he has pled are "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Mere assertion of entitlement to relief, without some factual showing, is insufficient under Federal Rule of Civil Procedure 8(a)(2). *See Twombly*, 550 U.S. at 556. For these reasons, this Court will dismiss without prejudice Count II of Plaintiff's complaint as against Defendant CIU10, to the extent it is predicated on the theory of a policy or custom

of Defendant CIU10 rather than a theory of deliberate indifference, which will be discussed below.

2. Deliberate Indifference

To state a claim under the third scenario on a theory of municipal inaction, a Plaintiff must allege that the municipality, through its policymaker, acted with deliberate indifference to the risk of harm to the Plaintiff and that the municipality's conduct affirmatively contributed to the Plaintiff's injury. *See Black by Black v. Indiana Area School Dist.*, 985 F.2d 707, 712 (3d Cir. 1993). "In order to establish deliberate indifference on the part of the defendant, something more culpable must be shown than a negligent failure to recognize a high risk of harm." *Id.* (quoting *Colburn v. Upper Darby*, 946 F.2d 1017, 1025 (3d Cir. 1991).

Here, Plaintiff alleges that "a supervising CIU employee who had daily interactions with Defendant Wrye suspected that she was engaged in an inappropriate sexual relationship with C.K. and learned that she was accused of having an affair with C.K., but failed to investigate or report Defendant Wrye's misconduct." Whether that "supervising employee" is ultimately determined to be a final policymaker is a fact-intensive inquiry which this Court cannot decide at this stage of the litigation. Plaintiff has, further, pled that this supervising employee had actual knowledge of the sexual abuse and failed to do anything about it. The Court concludes that this is sufficient to allege that CIU10 acted with

deliberate indifference. Consequently, Defendant's motion to dismiss Count II is denied to the extent Count II is based on a theory of deliberate indifference.

**B. Count III Title IX**

Defendant CIU10 next contends that Plaintiff's claim against it under Title IX must be dismissed because he failed to allege three essential elements of such a claim: (1) that "actual knowledge" was provided to (2) an "appropriate person" under the statute, and (3) that the person acted in deliberate indifference to the abuse. Plaintiff responds that he has pled that a "supervising CIU employee" had knowledge of the affair between Defendant Wrye and C.K. Moreover, Plaintiff argues that he has sufficiently alleged that this supervising employee failed then to investigate or to report Defendant Wyre's misconduct.

In order to assert a Title IX claim, the plaintiff must allege: (1) either *quid pro quo* sexual harassment or a sexually hostile environment; (2) that he provided actual notice to an "appropriate person" who had authority to take corrective measures; and (3) that the institution's response to the harassment amounted to deliberate indifference. *See Gebser v. Lago Vista Independent School Dist*, 524 U.S. 274, 291-92 (1998). The Court will address each contested element in turn.

    1.    <u>Appropriate Person</u>

First, Plaintiff must allege that there was an appropriate person who was made aware of the abuse or discrimination. An appropriate person is "an official

who, at a minimum, has authority to address alleged discrimination and to institute corrective measures on the school district's behalf." *Bostic v. Smyrna School Dist.*, 418 F.3d 355, 360 (3d Cir. 2005); *see also Gebser*, 524 U.S. at 290 ("An 'appropriate person' under § 1681 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination."). "The authority to supervise a teacher and to investigate a complaint of misconduct implies the authority to initiate corrective measures such as reporting her findings to her superior or to the appropriate school board official." *Warren ex rel. Good v. Reading School Dist.*, 278 F.3d 168, 173 (3d Cir. 2002).

Whether a school official is an "appropriate person" with the authority to take corrective actions is a highly fact-dependent inquiry. In *Bostic*, while the high school principal and assistant principal each qualified as appropriate persons in that situation, the United States Court of Appeals for the Third Circuit was careful to explain that this determination was not made solely by virtue of their positions. *Bostic*, 418 F.3d at 361. Rather, the determination rested on the responsibilities and authority entrusted to those persons. *See Warren*, 278 F.3d at 171 (holding that a guidance counselor was not an "appropriate person" under the statute); *see also Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1247 (10th Cir. 1999) ("We decline to simply name job titles that would or would not adequately satisfy this requirement. 'School districts contain a number of layers below the school

13

board: superintendents, principals, vice-principals, and teachers and coaches, not to mention specialized counselors such as Title IX coordinators. Different school districts may assign different duties to these positions or even reject the traditional hierarchical structure altogether.' Because officials' roles vary among school districts, deciding who exercises substantial control for the purposes of Title IX liability is necessarily a fact-based inquiry.") (quoting *Rosa H. v. San Elizario Independent School Dist.*, 106 F.3d 648, 660 (5th Cir. 1997)).

Here, Plaintiff alleges that a "supervising CIU employee" had knowledge of the relationship between himself and Defendant Wrye. While he does not specify the title of that supervising employee, even if he had this Court would be unable to determine whether that employee can be considered an "appropriate person" under Title IX, give the fact-based nature of the element. Importantly, this Court notes that, as alleged, Defendant Wrye was actually a teacher's aide and therefore it is not clear to the Court at this stage who would have had authority over her to take corrective action. Accordingly, the Court declines to dismiss Plaintiff's Title IX claim on this basis at this early juncture in the litigation.

2. <u>Actual knowledge</u>

Next, Plaintiff must allege that the "appropriate person," discussed above, had actual knowledge of the abuse or discrimination. *See Gebser*, 524 U.S. at 290. Actual knowledge, while not strictly defined by the Supreme Court in *Gebser*,

14

requires more than a mere knowledge of a possibility of or potential for abuse or discrimination. *See Bostic*, 418 F.3d at 361 (relying on the Supreme Court's express rejection of constructive notice or *respondeat superior* principles in a Title IX inquiry). Rather, an educational institution has actual knowledge of discrimination or abuse if an appropriate person at the institution has knowledge of facts sufficiently indicating danger to a student, such that the institution can reasonably be said to be aware of the danger. *Id.* (upholding the jury instructions of the district court).

In this case, Plaintiff has alleged that "a supervising CIU employee who had daily interactions with Defendant Wrye suspected that she was engaged in an inappropriate sexual relationship with C.K. and learned that she was accused of having an affair with C.K." Though this allegation is not particularly specific, Plaintiff has pled that this supervising employee had actual knowledge of the relationship. The allegation is therefore sufficient to survive the instant motion to dismiss.

   3. <u>Deliberate Indifference</u>

Finally, a plaintiff must demonstrate that the appropriate person with actual knowledge of the sexual abuse or discrimination acted with deliberate indifference to the discrimination. *See Gebser*, 524 U.S. at 290. Deliberate indifference to

discrimination essentially means a decision not to remedy the violation. *See Bostic*, 418 F.3d at 360 (quoting *Gebser*, 524 U.S. at 290).

Here, Plaintiff has alleged that the supervising employee who learned of the sexual encounters between Plaintiff and Defendant Wrye failed to investigate or report Defendant Wrye's misconduct. Once again, at this stage in the litigation, this allegation is sufficient to demonstrate that CIU10 acted with deliberate indifference to Plaintiff's abuse in knowing (through this "supervising employee," to the extent that employee is determined to be an "appropriate person" at a later date) of the abuse and failing to either investigate or report it. Consequently, Defendant CIU10's motion to dismiss this claim will be denied.

**IV. CONCLUSION**

In accordance with the foregoing reasoning, Defendant's motion to dismiss is granted in part and denied in part. To the extent Plaintiff's claim under 18 U.S.C. § 1983 is predicated on a policy adopted or promulgated by CIU10, it is dismissed without prejudice with leave to amend to allege more specifically the contours of that policy. To the extent that claim is predicated, however, on CIU10's deliberate indifference to a known risk, Defendant's motion to dismiss is denied. Moreover, Defendant's motion to dismiss Count III under Title IX is denied.

BY THE COURT:


/s Matthew W. Brann
Matthew W. Brann
United States District Judge