IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| C.K., | : | 4:15-CV-00280 |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| HOPE WRYE, | : | |
| in her individual capacity, | : | (Judge Brann) |
| CENTRAL INTERMEDIATE | : | |
| UNIT #10, and PHILIPSBURG- | : | |
| OSCEOLA AREA SCHOOL | : | |
| DISTRICT | : | |
| | : | |
| Defendant. | | |

**MEMORANDUM**
December 2, 2015

Pending before this Court are two motions to dismiss, one filed by Defendant Central Intermediate Unit #10 (hereinafter "CIU10")[1] and one filed by Defendant Philipsburg-Osceola Area School District,[2] (collectively "Defendants"), for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants seek to dismiss Count II of Plaintiff C.K.'s (hereinafter "C.K.") second amended complaint, alleging municipal liability under 42 U.S.C. § 1983, to the extent that the claim was predicated on a policy adopted or promulgated by CIU10. In accordance with the following reasoning, Defendants' motions to dismiss are both denied.

---

[1] ECF No. 41.
[2] ECF No. 39.

**I. BACKGROUND**

Plaintiff C.K. filed the instant matter against Defendant Hope Wrye, CIU10, and the Philipsburg-Osceola Area School District alleging that he was sexually abused by Defendant Wrye, an employee of CIU10 who was assigned to the Philipsburg-Osceola Area School District. During the 2000-2001 school year, Plaintiff was fifteen years old and in the ninth grade at Philipsburg-Osceola Senior High School. He had learning difficulties, received special emotional support, and was educated under the terms of an Individualized Educational Program. He was assigned to the emotional support classroom where Defendant Wrye, thirty-one years old at the time, was the teacher's assistant.

In his complaint, C.K. alleges that Defendant Wrye spent an inordinate amount of time with him and displayed an uncommon interest in him within months of being placed in her classroom. According to C.K., Defendant Wrye openly interacted with him in an inappropriate manner by making flirtatious comments, engaging in teasing and other physical contact, and wandering the hallways of the school with him. On one occasion she even blew kisses at C.K. while he was in study hall, causing a supervising teacher to close the door.

By early 2001, C.K. alleges that Defendant Wrye was leaving school with him on a daily basis, taking him to her house, and coercing him to engage in sexual activity. Employees of the school district and CIU10 allegedly observed the two

leaving the school together and even observed C.K. at Defendant Wrye's home. The inappropriate interactions and behaviors had eventually became so pervasive that at least one school district employee complained to the high school principal, John Mackin, that they believed Defendant Wrye was having an affair with C.K. Moreover, a supervising CIU10 employee who had daily interactions with Defendant Wrye suspected that she was engaged in an inappropriate sexual relationship with Plaintiff but failed to investigate or report Defendant Wrye's misconduct.  After this report, John Mackin summoned Defendant Wrye to his office and questioned her regarding the accusation. C.K. alleges, however, he was never questioned about his relationship with Defendant Wrye, no formal investigation was ever initiated, and the police were never contacted.

At the beginning of the 2002-2003 school year, Defendant Wrye was transferred to another school within the school district. She nevertheless continued to have contact with C.K. at his high school, which was observed by CIU10 and school district employees and officials. By October of 2003, C.K. was unable to function at school and he withdrew, apparently in light of the abuse.  Immediately thereafter, C.K. and Defendant Wrye began to live together and within a few weeks Defendant Wrye became pregnant with his child.

C.K. initially filed this action alleging three counts. Count I, against Defendant Wrye, alleged violations of 42 U.S.C. § 1983. Counts II and III, against

CIU10 and the Philipsburg-Osceola Area School District, alleged violations of 42

U.S.C. § 1983 and Title IX, 20 U.S.C. § 1681, respectively. In response to a

motion to dismiss by CIU10, this Court dismissed, without prejudice, Count II

against CIU and the Philipsburg-Osceola Area School District, to the extent that

the claim was predicated on a policy adopted or promulgated by CIU10.[3] C.K.

subsequently filed his second amended complaint,[4] which spurred the instant

motions to dismiss.[5]


## II. LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), a court must view all allegations stated in the complaint as true

and construe all inferences in the light most favorable to plaintiff.[6]  However, "the

tenet that a court must accept as true all of the [factual] allegations contained in the

complaint is inapplicable to legal conclusions."[7]  In ruling on such a motion, the

court primarily considers the allegations of the pleading, but is not required to

consider legal conclusions alleged in the complaint.[8]  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

---

[3] ECF No. 36.
[4] ECF No. 38.
[5] ECF No. 38; ECF No. 41.
[6] *See Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).
[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).
[8] *Kost*, 1 F.3d at 183.

4

suffice."[9]  At the motion to dismiss stage, the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint.[10]

A complaint should only be dismissed if, accepting as true all of the allegations in the amended complaint, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face.[11]  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[12]

"In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading."[13]  Federal Rule of Civil Procedure 8 "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds on which it rests.'"[14]  Even under this lower notice pleading standard, however, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief.[15]  Instead, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as

---

[9] *Iqbal*, 556 U.S. at 678.
[10] *See Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).
[11] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007).
[12] *Iqbal*, 556 U.S. at 663-664.
[13] *Hellmann v. Kercher*, No. 07-1373, 2008 WL 1969311 at * 3 (W.D. Pa. May 5, 2008) (Lancaster, J.).
[14] *Twombly*, 550 U.S. at 554 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).
[15] *See Hellmann*, 2008 WL 1969311 at *3.

true, suggest the required elements of a particular legal theory.[16]  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not "shown" - - "that the pleader is entitled to relief."[17]

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding."[18]  A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law."[19]  If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[20]

## III. DISCUSSION

Defendants argue that the Court should dismiss Count II of C.K.'s second amended complaint; they suggest that the violation of 42 U.S.C. § 1983, to the extent that it is predicated on a theory that a policy or custom was adopted by Defendants, is not sufficiently supported by the allegations as pleaded by C.K. The Philipsburg-Osceola Area School District merely argues that the allegations in the second amended complaint and the allegations in the amended complaint, that

---

[16] *See Twombly*, 550 U.S. at 561.
[17] *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)).
[18] *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).
[19] *Id.* at 326.
[20] *Id.* at 327.

were dismissed in this Court's prior Order, are "essentially similar."[21] CIU10

argues that C.K. has again failed to plead that an officer promulgated and

implemented a policy which led to his sexual abuse or that there is evidence of a

custom so widespread as to have the force of law.[22]

In his opposition brief, C.K. responds that he has adequately pled that the

lack of action in investigating and reporting C.K.'s alleged known sexual abuse

was based on a policy, practice, or custom of not reporting or acting on criminal

conduct to protect the Defendants' reputation. Moreover, he argues, that at this

early stage in the litigation, the pleadings are sufficient to allow him the

opportunity to conduct discovery.[23]

As discussed in this Court's last Order, the Supreme Court of the United

States, in *Monell v. Department of Social Services of City of New York*, held that

"when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury . . . the government as an entity is responsible under §

1983."[24]  A policy is defined as a decision of a municipality's "duly constituted

legislative body or of those officials whose acts may fairly be said to be those of

---

[21] ECF No. 40 at 5.
[22] ECF No. 42 at 5.
[23] ECF No. 43 at 10.
[24] 436 U.S. 658, 694 (1978).

the municipality."[25]  A custom, on the other hand, is a practice "that has not been

formally approved by an appropriate decisionmaker" but "is so widespread as to

have the force of law."[26]

To be liable under § 1983, the acts of a government employee are deemed to

be the result of a policy or custom where "the appropriate officer or entity

promulgates a generally applicable statement of policy and the subsequent act

complained of is simply an implementation of that policy," where "no rule has

been announced as policy but federal law has been violated by an act of the

policymaker itself," and where "the policymaker has failed to act affirmatively at

all, though the need to take some action to control the agents of the government is

so obvious, and the inadequacy of existing practice is so likely to result in the

violation of constitutional rights, that the policymaker can reasonably be said to

have been deliberately indifferent to the need."[27] Under the first two scenarios, a

plaintiff "must identify a custom or policy, and specify what exactly that custom or

policy was."[28]

Following a determination that the defendant municipality acted under an

appropriate policy or custom, "[t]he plaintiff must also demonstrate that through its

---

[25] *Board of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403-4 (1997); *see also Kocher v. Larksville Borough*, 548 Fed.Appx. 813, 821 (3d Cir. 2013).
[26] *Id*. at 404.
[27] *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Bryan County*, 520 U.S. at 404).
[28] *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008)

deliberate conduct, the municipality was the 'moving force' behind the injury alleged."[29] Specifically, this means that a plaintiff must demonstrate that "the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[30]

To that end, C.K. claims that he has provided sufficient allegations in his second amended complaint.  Specifically he has pled that:

> 47. At all times relevant, the School District and CIU engaged in a custom and/or policy of not reporting to authorities known or suspected criminal activity involving students or teachers, including allegations of sexual misconduct, particularly those in the emotional support program, for fear it would reflect poorly on the School District and CIU.

> 48. Likewise, at all times relevant, the School District and CIU did not adequately investigate known or suspected criminal activity involving students or teachers, including allegations of sexual misconduct, particularly those in the emotional support program, for fear it would reflect poorly on the School District and CIU.

> 49. The above-described custom and/or policy of not reporting criminal activity or fully investigating criminal allegations within the High School and CIU was consciously adopted by Principal Mackin and CIU policymakers.[31]

This Court concludes that C.K. has adequately pled that the Defendants have engaged in two customs or policies: first, not reporting to authorities known or suspected criminal activity and second, not investigating known or suspected

---

[29] *Board of County Commissioners of Bryan County, Okl.*, 520 U.S. at 403-4.
[30] *Id.*
[31] ECF No. 38 at 9.

criminal activity. C.K. has further pled that the policies or customs were adopted by Principal Mackin and CIU policymakers "consciously." The allegations regarding Defendants' deliberate conduct in engaging in policies or customs appears in accordance with the Supreme Court's seminal holding in *Board of County Com'rs of Bryan County, Okl. V. Brown*.[32] Furthermore, while C.K. does not specifically plead that the Defendants' actions were the "moving force" behind C.K.'s alleged sexual abuse, he does state that he suffered permanent psychological damage and emotional distress "[a]s a direct and proximate result of Defendants' violations of C.K.'s Fourteenth Amendment rights."[33]

As this Court must accept all of C.K.'s allegations as true in deciding Defendants' motions to dismiss,[34] and considering the early stage of this litigation, this Court finds C.K.'s pleadings sufficient to survive Defendants' motions to dismiss. Defendants' arguments, while valid, are perhaps more appropriately taken up in later stages of litigation, after the parties have had the opportunity to conduct discovery on the matter.

---

[32] 520 U.S. 397, 404 (1997).
[33] ECF No. 38 at ¶ 50.
[34] *Hishon*, 467 U.S. at 73.

**IV. CONCLUSION**

In accordance with the foregoing analysis, Defendants' motions to dismiss[35]

Count II of C.K.'s second amended complaint, to the extent that they are

predicated on the theory of a policy of custom, are denied.

An appropriate Order follows.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[35] ECF No. 39; ECF No. 41.